**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:

IMAGE INNOVATIONS HOLDINGS, INC., *et al.*,

                           Reorganized Debtors.

-------------------------------------------------------------x

Chapter 11
(Post-Confirmation)

Case No. 06-11540 (ALG)
(Jointly Administered)

## MEMORANDUM OF OPINION

A P P E A R A N C E S :

PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP
Attorneys for Debtors
  By:   Sherri D. Lydell, Esq.
1065 Avenue of the Americas
New York, New York 10018

COHEN, TAUBER, SPIEVACK & WAGNER, LLP
Attorneys for Pride Capital Group
  By:   Leo L. Esses, Esq.
420 Lexington Avenue
New York, New York 10170

BLANK ROME, LLP
Attorneys for H.E. Capital, S.A.
  By:   Edward J. Lobello, Esq.
405 Lexington Avenue
New York, New York 10174

GENOVESE, JOBLOVE & BATTISTA, P.A.
Attorneys for H.E. Capital, S.A.
  By:   Robert F. Elgidely, Esq.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131

DREIER, LLP
Attorneys for Coach Capital LLC
 By:   Joshua H. Epstein, Esq.
       Timothy A. Solomon, Esq.
499 Park Avenue
New York, New York 10022

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of creditors, H.E. Capital, S.A. ("H.E.") and Coach

Capital LLC ("Coach") (collectively, the "Creditors"), seeking leave to bring an

adversary proceeding on behalf of the bankruptcy estate of Image Innovations Holdings,

Inc., *et al.* (the "Debtors").  The Creditors seek derivative standing to bring a suit against

Pride Capital Group, LLC, d/b/a Great American Group ("Great American"), for

damages allegedly caused by Great American's conduct of an auction sale of the

Debtors' inventory of sports memorabilia, collectibles, and art work (collectively, the

"Inventory").  The issue is whether the Court should grant derivative standing to creditors

to bring suit against a debtor's professional premised on malpractice, when the Court has

already determined (and substantially reduced) a fee award to the same professional, and

the motion is brought long after confirmation of the Debtors' plan of reorganization.  For

the reasons set forth below, the Court will not grant standing under these circumstances,

and the Creditors' motion is denied.

<u>BACKGROUND</u>

The Debtors were in the business of selling sports and entertainment celebrity

memorabilia.  After business reverses, the Debtors filed voluntary bankruptcy petitions

on July 6, 2006, and eventually determined to liquidate their assets.  They proposed to

sell all Inventory at an auction and use the proceeds thereof to pay creditors out of a

liquidation fund.  The Court approved Great American's retention as liquidation

consultant and auctioneer by order dated August 31, 2006, and granted the Debtors'

motion to approve a sale by auction by order dated October 5, 2006.  The auction was

held on October 28 and October 31, 2006.  The auction's results were a great

disappointment, yielding proceeds of $322,883, or approximately one-tenth of the

Inventory's estimated cost value.  Whether this result was the fault of the auctioneer,

general market conditions, or some other factor is disputed.

On or about January 5, 2007, the Debtors filed a liquidating plan (the "Plan"),

providing for a distribution of the proceeds of the sale and of limited additional assets.

No mention was made in the Plan or Disclosure Statement of possible claims against

Great American in connection with its conduct of the sale, or of the retention of any such

claims or the distribution thereof.  The Plan contained a provision that has become

common in Chapter 11 cases providing that on confirmation the Debtors' "agents" and

"representatives" would be released from claims arising out of their pre-confirmation

relationship with the Debtors, except for claims resulting from fraud, gross negligence,

breach of fiduciary duty, malpractice or willful misconduct.  §§ 1802, 1803.  On August

21, 2007, the Debtors' Joint Plan of Liquidation  was confirmed.[1]

Earlier, on January 25, 2007, Great American moved for payment of commissions

totaling $49,220.34 and expenses totaling $178,205.20.  The Creditors and the U.S.

Trustee objected, and proceedings on all fee applications were postponed until after plan

confirmation.  These hearings were finally held on February 13, 2008.  Prior to the

hearing, the U.S. Trustee's objection was resolved when Great American reduced its fee

---

[1] The Creditors purport to have a security interest in the Debtors' property and to be entitled to most of the
proceeds.  An adversary proceeding against the Creditors, claiming that the claimed liens are invalid, was
recently settled.

request by $5,000. (Hr'g Transcript, Feb. 13, 2008, 9:2-9.) Following the hearing, the

Court denied Great American its commissions, finding that Great American failed to

satisfy its burden of demonstrating the reasonableness of its fees. (Hr'g Transcript, Feb.

13, 2008, 16:10-17:11.) The Court allowed reimbursement of certain expenses that Great

American had incurred, totaling $101,413.12, including advertising, insurance, and labor

costs.

At the February 13th hearing, after the Court had closed the record on the fee

application and had returned from a recess and was prepared to deliver its decision, the

Creditors announced for the first time that they intended to file the present motion

seeking derivative standing to sue Great American for malpractice. The motion was filed

on February 28, 2008, and the Court delayed entry of an order on Great American's fee

application to give the Creditors an opportunity to be heard on the subject of entry of

such an order. Although the Creditors stated they would proceed with their motions, they

voiced no objection to the Court's entry of an order on Great American's fee application,

and an order was entered on April 9, 2008.

In their motion, the Creditors argue that Great American was grossly negligent

because it auctioned most of the Inventory over a thirteen-hour period, failed to establish

appropriate reserves, failed to sell the Inventory subject to such reserves, failed to

maintain appropriate intervals between bidding, and permitted its representative to

successfully bid on items without Court approval. (Creditors' Mot. for Derivative

Standing ¶¶ 13-14.) These contentions were also made in the Creditors' opposition to

Great American's fee application.

The Debtors and Great American objected to the Creditors' motion to obtain

derivative standing on April 4, 2008.  They argue that derivative standing is barred by

principles of *res judicata* in that the Court's determination on fees was a final ruling on

Great American's professional conduct, and that the Creditors should have sought relief

at an earlier time.  Further, the Debtors contend that malpractice litigation by the

Creditors against Great American would be unduly burdensome, that the Creditors'

theory of damages is based solely on an estimated Inventory value the Debtors believe to

be unreliable, and that the suit would delay closing of the case and drive up professional

fees.

<u>DISCUSSION</u>

There is no question that under certain circumstances a creditor can bring a claim

on behalf of the debtor.  In this Circuit, a creditor can bring suit with the consent of a

trustee or debtor-in-possession if the Court finds that the suit is in the best interest of the

estate and "necessary and beneficial" to the resolution of the bankruptcy proceedings.

*Unsecured Creditors of Commodore Int'l Ltd. & Commodore Electronics Ltd. v. Gould*

(*In re Commodore Int'l Ltd.*), 262 F.3d 96, 99-100 (2d Cir. 2001).  A creditor can also

acquire standing to bring suit if the trustee or debtor-in-possession has "unjustifiably

failed" to do so.  *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes* (*In re

STN Enters.*), 779 F.2d 901, 904 (2d Cir. 1985).  To show unjustifiable failure to bring

suit, the creditor must first present a "colorable claim or claims for relief," and the Court

must determine "whether an action asserting such claim(s) is likely to benefit the

reorganization estate." *Id.*[2]  The Second Circuit recently reaffirmed these two grounds on

---

[2] Although addressing committee standing, these rules also apply where individual creditors seek standing.
*See Glinka v. Murad* (*In re Housecraft Indus. USA, Inc.*), 310 F.3d 64, 71, n.7 (2d Cir. 2002).

5

which creditors can obtain standing to bring an action on behalf of a debtor.  *See Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P.* (*In re AppliedTheory Corp.*), 493 F.3d 82 (2d Cir. 2007).

In this case, the Debtors oppose the Creditors' motion, claiming that the lawsuit would not benefit the estates because the Creditors' claims are speculative and unfounded.  They contend that a lawsuit would delay closing the case, requiring the Debtors to pay professionals and U.S. Trustee fees and prepare and file monthly operating reports and post-confirmation status reports.  (Statement of Debtors, ¶ 4.)  In any event, the Court need not reach the question whether the benefits of the suit are likely to outweigh the costs because the Court's February 13 ruling on Great American's fee application is *res judicata* and bars the Creditors' putative lawsuit.

Three Circuit Courts and a District Court in this Circuit have held that orders deciding final fee applications preclude malpractice claims based on the same legal services.  *See Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003) (legal malpractice); *Iannochino v. Rodolakis* (*In re Iannochino*), 242 F.3d 36 (1st Cir. 2001) (legal malpractice); *Osherow v. Ernst & Young, LLP* (*In re Intelogic Trace, Inc.*), 200 F.3d 382 (5th Cir. 2000) (accounting malpractice); *D.A. Elia Constr. Corp. v. Damon & Morey, LLP* (*In re D.A. Elia Constr. Corp.*), ___ B.R. ___, 2008 WL 907366 (W.D.N.Y. Mar. 31, 2008) (legal malpractice).  These cases are consistent with New York law, which provides that "a judicial determination fixing the value of a professional's services necessarily decides that there was no malpractice."  *Lipton v. Shea & Gould*, 1993 WL 126523 at *3 (S.D.N.Y. Apr. 22, 1993), citing *Nat Kagan Meat & Poultry, Inc. v. Kalter*, 70 A.D.2d 632, 416 N.Y.S.2d 646, 647 (2d Dep't 1979).  Stated differently, "malpractice

is a defense to an action to recover for professional services." *Altamore v. Friedman*, 193 A.D.2d 240, 247, 602 N.Y.S.2d 894, 898 (2d Dep't 1993), citing *Kissimmee Mem. Hosp. v. Wilson*, 188 A.D.2d 802, 803-04, 591 N.Y.S.2d 239, 241 (3d Dep't 1992); *see also Chisolm-Ryder Co., Inc. v. Sommer & Sommer*, 78 A.D.2d 143, 146, 434 N.Y.S.2d 70, 72-73 (4th Dep't 1980). Affirmative defenses are generally waived if not timely asserted. *See Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994).

The foregoing cases all rest on the four factors that determine whether a prior determination bars a subsequent action, namely, whether (1) the prior determination was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same. *Corbett v. MacDonald Moving Serv., Inc.*, 124 F.3d 82, 87-88 (2d Cir. 1997); *see also Celli v. First Nat'l Bank of Northern N.Y.* (*In re Layo*), 460 F.3d 289, 292 (2d Cir. 2006). These four factors are all present in this case.

The first element, finality of a judgment, is satisfied because the order on Great American's fee application was a final judgment on the merits. To be final, an order "must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *Iannochino*, 242 F.3d at 43, quoting *In re Integrated Res., Inc.*, 3 F.3d 49, 53 (2d Cir. 1993); *see also Grausz*, 321 F.3d at 472; *D.A. Elia Constr.*, 2008 WL 907366 at *4 (holding that an order on a final fee application is a final judgment, and noting that final fee orders are sufficiently final to be appealed). This Court's order on Great American's final fee application disallowed commissions to Great American but allowed certain expenses. The decision was not avowedly tentative, and it has not been

appealed. The Debtors, the Creditors, and Great American were all heard on the quality

and value of Great American's conduct. These issues were put before the Court in

connection with the proceeding on Great American's fee award, and the order resolved

them. The Creditors did not object to the Court's entry of such an order, and their oral

statement that they would seek permission to sue on the Debtors' behalf simply came too

late.

The second and third factors, identity of parties and a hearing before a court of

competent jurisdiction, are also satisfied here. The second factor is met because the

parties to this action and the prior fee dispute are identical—the Creditors appeared at the

fee hearing and objected to Great American's fee application. The third factor is satisfied

because § 330 of the Bankruptcy Code gives the Court jurisdiction to enter a final order

on a professional's final fee application.

Finally, the fourth element, identity of cause of action, is satisfied because the

final fee application and the malpractice claim share the same "nucleus of operative fact"

or "central factual question." *D.A. Elia Constr.*, 2008 WL 907366 at *4, citing *In re

Layo*, 460 F.3d at 292; *Grausz*, 321 F.3d at 473; *Iannochino*, 242 F.3d at 47. Both

actions require a finding as to the nature and the quality of professional services, and thus

the "core of operative facts" or "central factual question" is the same. *Grausz*, 321 F.3d

at 473; *Iannochino*, 242 F.3d at 47; *Intelogic Trace*, 200 F.3d at 386-87; *D.A. Elia

Constr.*, 2008 WL 907366 at *4. The *Iannochino* Court particularly focused on identity

of cause of action. It stated that when a Bankruptcy Court awards fees, there is an

implicit "finding of quality and value" of the attorney's service. *Iannochino*, 242 F.3d at

47, citing *Intelogic Trace, Inc.*, 200 F.3d at 387. As a result, the Court concluded that

this finding and the putative malpractice claim address "the same factual question: What advice did the defendants give to the Iannochinos during the bankruptcy, and what was the quality and value of that service?" *Iannochino*, 242 F.3d at 47.

The Creditors argue that the foregoing cases can be distinguished because in those situations the Bankruptcy Court approved a fee award, implying that there was value to the professional's services, whereas here the Court denied all commissions. (Creditors' Motion, ¶ 34.) In denying commissions to Great American, this Court made certain negative findings regarding the firm's conduct, but it certainly did not find that the firm's conduct precluded it from any recovery at all. It granted an amount in expense reimbursement that was more than twice the amount the firm sought in commissions. Moreover, there is a great difference between an order that results in a denial of fees and one that authorizes a suit that could in theory make the fee applicant affirmatively liable for all creditor losses in the case. As the Court said in *Iannochino*, quoting the Restatement (Second) of Judgments § 22(2)(b) (1982), "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." *Iannochino*, 242 F.3d at 42. Even if the assertion of a counterclaim for malpractice was not, strictly speaking, compulsory, as the fee application was a contested matter, *Iannochino*, 242 F.3d at 41-42, the Creditors remained silent too long. As the New York courts have ruled, "although New York does not have a compulsory counterclaim rule, 'a party is not free to remain silent in an action in which he is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory.'" *Santiago v. Lalani*, 256 A.D.2d 397, 399, 681 N.Y.S.2d 577, 578 (2d Dep't 1998), quoting *Henry Modell and*

*Co., Inc. v. Minister, Elders and Deacons of the Ref. Prot. Dutch Church of the City of N.Y.*, 68 N.Y.2d 456, 461, 510 N.Y.S.2d 63, 65, 502 N.E.2d 978, 980 (1986); *see also* DAVID D. SIEGEL, NEW YORK PRACTICE § 452 (4th ed. 2005); *Chisolm-Ryder Co., Inc.*, 78 A.D.2d at 145, 434 N.Y.S.2d at 72. Whatever the inference may be from the denial of fees, this Court made a finding on quality and value by awarding expenses, and it left open no room for an independent malpractice action. The fee application and malpractice claim are sufficiently similar that it is appropriate to apply *res judicata*.

The Second Circuit has added a further element in determining whether a prior order should be given the effect of *res judicata* in a bankruptcy case. Courts must also consider whether an independent judgment in a separate proceeding would "impair, destroy, challenge, or invalidate the enforceability or effectiveness" of the plan of reorganization. *In re Layo*, 460 F.3d at 292, citing *Corbett*, 124 F.3d at 8; *see also Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002) (legal malpractice and related breach of fiduciary duty claims barred due to failure to raise them in course of bankruptcy proceeding).

In the present case the Debtors confirmed a Chapter 11 plan that failed to disclose a possible claim against Great American and to deal with the distribution of the proceeds of any such claim to creditors.[3] The Plan instead provides for the expeditious liquidation of all assets; the only potential lawsuit disclosed is a joint suit with certain class action plaintiffs that has nothing to do with Great American. Although the Creditors have stated that they "would advance the cost of prosecuting the adversary proceeding on behalf of the Debtors' Estates and would seek reimbursement of said costs only if a recovery is

---

[3] It was disclosed that Great American's fees were subject to Court approval; however, as discussed above, there is a significant difference between a proceeding on reduction or disallowance of fees and one which would make the applicant potentially liable for all creditor losses.

10

obtained from [Great American]" (Creditor's Motion, ¶ 22), keeping the case open would subject the Debtor to various costs.  Moreover, professional fees awarded are already substantial, and "even if there was a recovery from the Proposed Action, the Debtors' outstanding professional fees would first have to be paid before any funds would be available for general unsecured creditors."  (Statement of Debtors, ¶ 9.)  Fees would be even higher if Great American claimed over against the Debtors or their counsel.  The fact that pursuit of the litigation against Great American would be inconsistent with "the effectiveness of the Plan" is a further reason to give *res judicata* effect to the fee order and to deny the present motion.[4]

CONCLUSION

The Creditors' motion for derivative standing to bring a malpractice claim against Great American is denied.  The Debtors are directed to settle an order on three days' notice.

Dated: New York, New York
       July 23, 2008

                              /s/ Allan L. Gropper
                              UNITED STATES BANKRUPTCY JUDGE

---

[4] Moreover, the Plan releases professionals from claims not founded on gross negligence or malpractice, and the Creditors' claims against Great American would have to be based thereon and not on simple negligence.